IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| RYAN D. HARLEY, | |
| Plaintiff, | Civil No. 18-00170 (RBK/KMW) |
| v. | **OPINION** |
| CITY OF WOODBURY, *et al.*, | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Detective Andrew DiGiambatista's Motion for Summary Judgment (Doc. No. 24). Defendant investigated Plaintiff Ryan D. Harley for an alleged robbery, leading to his arrest. However, Defendant failed to act when Plaintiff and other individuals presented him with an alibi, needlessly prolonging Plaintiff's detention. Nevertheless, Defendant is entitled to qualified immunity, and therefore his Motion is **GRANTED**.

**I.     BACKGROUND**

   **A.  Factual Background**

This matter arises out of Plaintiff's August 27, 2015 arrest in connection with an armed robbery that allegedly occurred on August 24, 2015. (Doc. No. 24-2 ("Def. SUMF") at 1). On that date, Robin Radziewicz informed Woodbury Police officers that she and Joshua Storms were robbed at gunpoint by three unidentified black males at 556 Salem Avenue in Woodbury, New Jersey. (*Id.* at ¶¶2–3.) Three other witnesses—Ryan Kendricks, Valeri Petti, and Matthew

Heritage—were in the house at this time. (*Id.* at ¶ 3). After being assigned to investigate the case, Defendant took statements from these witnesses; Storms identified one of the men as "Ready" and another as "Daddy-O." (*Id.* at ¶ 9).

Defendant knew that Plaintiff went by the nickname "Ready," and knew that he had been involved in the sale of illegal narcotics. (*Id.* at ¶ 14). Storms, Kendricks, and Valeri participated in a photo line-up. (*Id.* at ¶ 15). During the photo line-up, Storms and Kendricks both stated that they were 70% sure that Plaintiff was one of the men who entered the house. (*Id.* at ¶ 15–18). Valeri was unable to identify Plaintiff from the lineup. (*Id.* at ¶ 17). Defendant then contacted the Assistant County Prosecutor and prepared a Complaint-Warrant for the arrest of Plaintiff. (*Id.* at ¶¶ 19–20). Municipal Court Judge Martin Whitcraft approved the warrant and set bail at $150,000.000. (*Id.* at ¶ 21).

On August 27, 2015, the Woodbury Police arrested Plaintiff during a vehicle stop. (*Id.* at ¶ 23). Plaintiff was the passenger in a vehicle operated by Brianna Garland. (*Id.*). After Plaintiff's arrest, Defendant interviewed him at the Woodbury Police Department. (Doc. No. 25 at 16–20 ("Pl. CSUMF") at ¶ 9).[1] Plaintiff informed Defendant that he was on probation in the Gloucester County Drug Court program, and that as part of the program he was required to attend weekly Intensive Outpatient Program ("IOP") meetings for substance abuse. (*Id.*). Further, Plaintiff told Defendant that he was at an IOP meeting at the time of the robbery, and provided Defendant with the name of his IOP counselor, James Kearney. (*Id.*).

On August 28, 2015, Garland went to the Woodbury Police Station and stated that she was with Plaintiff on the night of August 24. (Def. SUMF at ¶ 26). She further explained that Plaintiff

---

[1] Pursuant to Local Rule 56.1(a), Plaintiff properly attached a Counterstatement of Facts to his opposition papers. Because Defendant did not include a response to Plaintiff's counterstatement in his reply papers, the material facts in Plaintiff's counterstatement are deemed undisputed.

had been at an IOP meeting when the robbery occurred and supplied supporting documentation. (Pl. CSMF at ¶ 10). Later, Daniel Holmes, a friend of Plaintiff, informed Investigator Brian Boucher that he dropped Plaintiff off at his IOP meeting at 6:00 p.m. on the night of August 24. (*Id*. at ¶ 11).

On September 8, 2015, Kendricks and Radziewicz participated in a photo lineup and were unable to identify Plaintiff among the subjects. (Def. SUMF at ¶¶ 28–29). On September 10, 2015, a Gloucester County Assistant Prosecutor informed Defendant that she had been contacted by individuals at the Gloucester County Drug Court about Plaintiff's arrest, and that these individuals had told her that Plaintiff was at an IOP meeting at the time of the alleged robbery. (*Id.* at ¶ 30; Pl. CSMF at ¶ 14). After Defendant told the Assistant Prosecutor about the results of the September 8 photo line-up the Assistant Prosecutor then asked Defendant to release plaintiff "ROR" before his upcoming court hearing. (Def. SUMF at ¶ 30). However, Defendant took no action to have Plaintiff released at this time.

On September 15, 2015, Defendant went to the Center for Family Services and spoke with Plaintiff's drug counselor James Kearney, who confirmed that Plaintiff was at his meeting on August 24, 2015. (*Id.* at ¶ 31). Defendant had Storms come in for another photo line-up on September 15, 2015. (*Id.* at ¶ 32). Storms told Defendant that he did not think Plaintiff or "Daddy-O" were involved in the robbery. (*Id.*) Subsequently, Plaintiff was released from detention on September 17, 2020. (Doc. No. 1-2 at 3). Defendant DiGiambatista closed the case due to lack of evidence on October 30, 2015. (Def. SUMF at ¶ 33).

### B. Procedural History

On July 25, 2017, Plaintiff filed a complaint in New Jersey Superior Court against Defendants City of Woodbury, Detective Sergeant Kelli Marro, Detective Andrew DiGiambatista,

and Officer Nicholas E. Cacciola. (Doc. No. 1-2 at 1). Defendants were served on November 30, 2019, and they removed this case to this Court on January 5, 2018. (Doc. No. 1 at ¶ 3).[2] On December 11, 2018, the parties stipulated the dismissal all defendants except DiGiambatista with prejudice. (Doc. No. 9).

With the dismissal of the claims against the other defendants, Plaintiff's Complaint brings three claims against DiGiambatista. Count I alleges "deprivation of rights and privileges secured to plaintiff by the Constitution and laws of the United States, including the due process clause of the Fourteenth Amendment to the Constitution of the United States" under 42 U.S.C. § 1983. (Doc. No. 1-2 at 4). Plaintiff also brings state law claims of negligence and gross negligence.

## II. LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968))). In deciding whether there is any genuine issue for trial, the court is not to weigh

---

[2] Defendants concede that their removal was outside the thirty-day time limit set by 28 U.S.C. § 1446(b). (Doc. No. 1 at ¶ 9). But sine this requirement of the removal statute is procedural, not jurisdictional, "a case may not be remanded for failure to comply with the 30-day time limit absent a timely motion." *Ariel Land Owners, Inc. v. Dring*, 351 F.3d 611 (3d Cir. 2003). To be timely, a motion to remand must be filed within thirty days of the filing of the notice of removal. 28 U.S.C. § 1447(c). No motion to remand has been filed in this case.

evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in his favor. *Id.* at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Plaintiff's Section 1983 claim alleges that Defendant violated his Fourteenth Amendment protection against the deprivation of liberty without due process of law. (Doc. No. 25 at 4). Plaintiff concedes that his arrest was supported by probable cause, (*id.* at 3), but asserts that his twenty-one-day detention was illegal because Defendant did not timely investigate his claim of being at an IOP meeting at the time of the robbery or disclose this potentially exculpatory information to the Gloucester County Prosecutor's Office. Defendant contends that he is entitled to qualified immunity.

Section 1983 is not "a source of substantive rights" but rather "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under Section 1983, a plaintiff must allege (1) a violation of a right under the Constitution

and (2) that the violation was caused by a person acting under color of state law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Qualified immunity is an affirmative defense that "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). However, qualified immunity will not shield from liability "'the official who knows or should know he is acting outside the law.'" *Noble v. City of Camden*, 112 F. Supp. 3d 208, 225 (D.N.J. 2015) (quoting *Butz v. Economou*, 438 U.S. 478, 506–07 (1978)).

To overcome qualified immunity, the Court must decide that the facts alleged, taken in a light most favorable to the plaintiff, make out: (1) a violation of a constitutional right; and (2) that the constitutional right at issue was "clearly established" at the time of a defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A right is clearly established if it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. The issue is a question of law. *Doughtery v. Sch. Dist. of Phila.*, 772 F.3d 979 (3d Cir. 2014). When assessing whether a right was clearly established, this Court may rely on decisions from the Supreme Court, the Third Circuit, and, in some cases, from other Courts of Appeals. *See Schmidt v. Creedon*, 639 F.3d 587, 598 (3d Cir. 2011). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Even if an individual is validly arrested, his indefinite detention in the face of protestations of innocence may amount to a deprivation of liberty in violation of the Fourteenth Amendment. *See Baker*, 443 U.S. at 145 (1979) (assuming without deciding that such a violation was possible);

*Diaz v. Bullock*, 268 F. Supp. 3d 640, 648 (D.N.J. 2017) ("An unlawful detention outside this [Fourth Amendment] context may still give rise to a false imprisonment claim but such a claim is premised solely on the Fourteenth Amendment." (citing *Potts v. City of Philadelphia*, 224 F. Supp. 2d 919, 937 (E.D. Pa. 2002))). In this case, Defendant failed to act on the protestations of Plaintiff and others that Plaintiff was at an IOP meeting during the alleged robbery, prolonging Plaintiff's detention. Rather than do nothing, Plaintiff contends that Defendant either should have investigated Plaintiff's alibi and sought to release Plaintiff himself or have at least disclosed the potentially exculpatory information to the Gloucester County Prosecutor's Office. (Doc. No. 25 at 8).

When evaluating the issue of whether officers have a constitutional duty to act upon "exculpatory information that dissipate[s] probable cause," the Third Circuit has done no more than to acknowledge that "the law in this area is not entirely settled." *Wilson v. Russo*, 212 F.3d 781, 792 (3d Cir. 2000) (declining to reach the issue of whether police officers have a constitutional duty to investigate exculpatory information because it was able to conclude that the officers in that case had not obtained such information). Nor is there any clear consensus amongst the other circuit courts. *See Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014) (finding constitutional violation where officers affirmatively misrepresented facts to prosecutors and defense counsel, resulting in two year detention for plaintiff); *Brady v. Dill*, 187 F.3d 104, 115 (1st Cir. 1999) (finding that police officers generally do not have a duty to release suspects after obtaining exculpatory information, although they may have to pass on such information to prosecutors or judicial officers); *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992) (determining that an officer who deliberately fails to disclose "undeniably credible and patently exculpatory evidence to the prosecuting attorney's office" may be liable under Section 1983); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)

(finding that police officers must pursue "reasonable avenues of investigation," and that "the continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause").

While these cases support the notion that police officers have at least some constitutional obligation to disclose exculpatory information, none of them are sufficiently factually similar to the present case to say that Defendant's conduct violated a clearly established constitutional right. *See De Ritis v. McGarrigle*, 861 F.3d 444, 458 n.12 (3d Cir. 2017) (indicating that a right is only clearly established if there is precedent "that is factually similar to the plaintiff's allegations, based on the specific context of the case"); *Diaz v. Bullock*, 268 F. Supp. 3d at 655 (finding that officers did not violate a clearly established right where, pursuant to a valid warrant, they arrested a man with the same name as their suspect but then ignored the arrestee's efforts to correct their mistake by offering his birth certificate and social security card as corroboration of his identity, resulting in eight day detention). Consequently, even if Defendant's conduct did violate the Constitution, he remains entitled to qualified immunity.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Section 1983 claim must be dismissed. Further, the Third Circuit has held that where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted). As the Court lacks an affirmative reason to retain jurisdiction over Plaintiff's state law claims for negligence and gross negligence,

they will be dismissed without prejudice to refiling in a court of competent jurisdiction.[3] Thus, Defendant's Motion for Summary Judgment is **GRANTED**. An Order follows.


Dated: 03/18/2020                                                         /s/ Robert B. Kugler
                                                                    ROBERT B. KUGLER
                                                                    United States District Judge

---

[3] Defendant's moving papers indicate that he seeks the dismissal with prejudice of all of Plaintiff's claims. (Doc. No. 24-1 at 1). However, he only addresses Plaintiff's Section 1983 claims, saying nothing at all about Plaintiff's state law claims. Because Defendant does not address the merits of the state law claims, neither will the Court.